UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PATRICIA DIXON,                                          :
                                                         :
                     **Plaintiff,**          :
                                                         :    **09 CV 2839 (HB)**
      - against -                             :
                                                         :    **OPINION &**
INTERNATIONAL FEDERATION OF                              :    **ORDER**
ACCOUNTANTS, RUSSELL GUTHRIE, IAN BALL,                  :
SYLVIA BARRETT, and "DOES 1-10,"                         :
                                                         :
                     **Defendants.**         :
                                                         :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

       Plaintiff Patricia Dixon ("Plaintiff" or "Dixon") brings suit against Defendants International Federation of Accountants ("IFAC"), Russell Guthrie ("Guthrie"), Ian Ball ("Ball"), Sylvia Barrett ("Barrett") and "Does 1-10," (collectively "Defendants") for employment discrimination based on age, race, and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Section 1981 of the Civil Rights At of 1866, 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C.R.R. § 8-107.  Plaintiff also alleges that Defendants retaliated against her for her complaints about discrimination, in violation of Title VII and New York State and City law.  Finally, Plaintiff alleges common law breach of contract by IFAC and tortious interference with contract by the individual defendants. Defendants moved for summary judgment on all counts, while Plaintiff cross-moved for partial summary judgment on her contract and tortious interference claims.  For the reasons that follow, Defendants' motion for summary judgment is GRANTED, Plaintiff's motion is DENIED, and this case is DISMISSED.

                                **I.**     **FACTUAL BACKGROUND**[1]

---

[1] The facts in this decision are drawn from undisputed facts submitted by the parties, and any disputes are noted.

This employment discrimination action, with ancillary common law claims, is brought against Plaintiff's former employer and certain co-workers and supervisors. Plaintiff Patricia Dixon is a 51 year-old black female from Jamaica who worked for IFAC from early 2006 to fall 2007. Defendant IFAC is a professional organization for accountants and accounting organizations, located in New York City. Defendant Ian Ball is a 61 year-old white male from New Zealand, and is IFAC's Chief Executive Officer. Defendant Russell Guthrie is a 44 year-old white male from the United States, and is IFAC's Director of Quality and Member Relations. Defendant Sylvia Barrett is a 41 year-old Asian female and a Canadian citizen, and is IFAC's Deputy Director of Communications.

In 2006, Plaintiff submitted a resume to IFAC, and in February of that year was contacted by Guthrie about an interview for a position called Senior Technical Manager – Transnational Auditors Committee ("STM/TAC"). The purpose of the position was, essentially, to act as a liaison and relationship manager between IFAC and certain high-profile member organizations. She was interviewed by Guthrie and Ball.[2] Barrett also met with Dixon, but Plaintiff states that it was merely an introductory meeting and not an interview. Thereafter, Guthrie recommended that IFAC extend an offer of employment to Dixon, and Ball decided to hire her. Through the interview process, or at some point early in her employment, the Defendants all became aware of Plaintiff's age, race, and national origin. Dixon accepted employment with IFAC on March 6, 2006.

Plaintiff was sent a letter from Ball on February 27, 2006, which extended an offer of employment for the STM/TAC position. *See* Umoh Decl., Ex. 4 (Letter from Ball to Dixon, Feb. 27, 2006). The attached job description indicated that Dixon's official supervisor would be Ball. The letter stated that the employment agreement would start in March 2006, "and continue for three years, with an option to renew for additional periods, should both parties be agreeable." *Id.*, ¶ 2. It also stated that, due to the "crucial role" of this position, "[i]t is therefore anticipated that, as a matter of professional courtesy, should you or IFAC choose to terminate this agreement before the end of the three year contract period, notice of at least three (3) months will be provided." *Id.* at ¶ 10. The letter also stated that "[t]his contract is subject to the terms and conditions of employment outlined in the IFAC Employee Handbook." *Id.* The letter itself contained no specific termination conditions. However, the IFAC Employee Handbook stated in

---

[2] Plaintiff claims a third individual participated in the interview as well. That person is not relevant to this case.

2

two separate locations that New York is an "at will" employment state and that this meant "you have the right to terminate your employment at any time," and, "[c]onversely, IFAC can also choose to terminate your employment at any time." Schatz Decl., Ex. A at i, 4 (IFAC Employee Handbook, dated Feb. 18, 2004).[3] Under grounds for "misconduct resulting in disciplinary action" that included termination, the handbook listed, *inter alia*, "unsatisfactory job performance or inability to cooperate with other employees." *Id.* at 8. Dixon signed the employment agreement letter and admits that she received and read a copy of the handbook prior to accepting the employment offer.

For the first eight months of her employment Dixon "shadowed" Guthrie to assist in learning her new position, and because some of his current responsibilities would be shifted to her position. Guthrie found her job performance "satisfactory" and her work on certain reports to be "adequate." She received an "exceeds expectations" mark for "cultivation of relationships" on her 2006 evaluation, and also received a certificate, which all IFAC employees received, that described her as "hardworking, talented, and energetic." At the end of 2006, she received a $5,000 raise and $1,000 bonus. On the other hand, Defendants describe a litany of acknowledged and otherwise unrefuted concerns about her job performance, with a particular focus on her interpersonal skills. In April, 2006, Guthrie informed Dixon that an interaction between herself and an administrative assistant, Neil Berenholz, caused him to become so upset that he cried. Her November 2006 annual performance evaluation, while containing some positive feedback and the aforementioned "exceeds expectations" check mark for certain items, her overall performance was deemed to "meet expectations" and specifically indicated that she needed to improve her interpersonal relationships, particularly with employees that worked below her. In January and March 2007, a variety of IFAC employees, none of whom are defendants, lodged complaints with the human resources department about Plaintiff, all of which focused on her management skills and job performance.[4] At some time in mid-June 2007, an

---

[3] Plaintiff objects to this declaration and evidence based on alleged hearsay. However, the IFAC Employee Handbook qualifies as a business record under Rule 803, and Ms. Schatz, as IFAC's Human Resources manager, is qualified to introduce the evidence as a custodian. *See* Fed.R.Evid. 803(6).

[4] Plaintiff asserts that the evidence to support these facts, a declaration from Dawn Tishkoff, a former IFAC Human Resources Manager with attached e-mails and a memo, are inadmissible. Tishkoff was employed at the same time as Dixon, claims personal knowledge of the events because the employees complained directly to her, and she drafted the attached documents at or around the time of these incidents. In addition, Defendants do not seek to use the underlying complaints by other employees for the truth of the matter asserted – that she actually did the things complained of – but simply that IFAC was on notice of complaints about Plaintiff. As such, the declaration and documents are admissible for this non-hearsay purpose. *See* Fed.R.Evid. 801(c).

3

IFAC employee, Christine Lopez, left work early after a negative interaction with Dixon. On June 28, 2007, after another incident between Dixon and Berenholz that led to him also leaving work early, the Human Resources Manager, Dawn Tishkoff, notified Guthrie of the incident, and the two met with Dixon to discuss their concerns. According to Tishkoff, Plaintiff was warned that her behavior was unacceptable and could lead to discipline or termination.

A day later, on June 29, 2007, Ball met with Plaintiff at her request. It was at this meeting that Plaintiff allegedly complained about discriminatory treatment. According to Dixon, she complained of discriminatory behavior from both Guthrie and Barrett. She points to essentially three discrete incidents: (1) Barrett once said to Dixon that "she can't believe that IFAC could hire a black Jamaican woman at 48 years of age;" (2) Guthrie would yell at Dixon and use Dixon's garbage can in her office to dispose of his trash; and (3) she did not receive sufficient administrative support compared to others.[5] Defendants do not concur with Plaintiff's description of the meeting, and there are no contemporaneous records that describe what occurred. On that same day, Tishkoff sent a memo to Ball and another IFAC employee that described in detail the litany of complaints about Dixon that stretched from October 2006 to June 2007. Ball conducted a follow-up meeting with Dixon on July 26, 2007. Prior to that meeting, Ball received an e-mail from Tishkoff that described "talking points" for the meeting; this consisted essentially of a further description of complaints lodged about Dixon's management and performance. The recommended focus of the meeting was to explain that while Plaintiff was having communication problems with her co-workers, she should be encouraged to improve her performance and "turn this around." Tishkoff Decl., Ex D. Dixon continued to work for IFAC after these meetings.

In October 2007, Dixon received her second annual performance evaluation from Guthrie. According to Guthrie, her performance had deteriorated and her management skills had not improved. In addition, Dixon failed to complete the "self-review" portion of her evaluation by the agreed-upon deadline which she herself set, and ultimately never provided it. On or about October 24, 2007, Ball decided to terminate Dixon. Dixon did not raise any concerns about

---

[5] Plaintiff could only point to these incidents in her deposition. In a Declaration completed and filed in conjunction with her Opposition to Defendant's Motion for Summary Judgment, Dixon alleges further discriminatory conduct. These additional statements will not be credited. "It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that…contradicts the affiant's previous deposition testimony." *Bickerstaff v. Vassar College*, 196 F.3d 435, 455 (2d Cir. 1999) (internal quotations omitted); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

discriminatory or retaliatory conduct at the meeting where she was terminated. On August 21, 2008, Dixon filed a charge of retaliation with the Equal Employment Opportunity Commission ("EEOC") but failed to include age, race, or national origin discrimination in her charge, though she insists it was supposed to have included those charges. On December 23, 2008, the EEOC determined that the evidence did not show a violation of the law, and declined to investigate further. Dixon filed this action on March 24, 2009.

## II.  DISCUSSION

### A. Legal Standard

"Summary judgment will be granted if the moving party shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)); *see also* Fed.R.Civ.P. 56(c). A material fact is one that will affect the outcome of the suit, and a dispute about a material fact occurs where there is sufficient evidence for a reasonable fact finder to return a verdict for the nonmoving party. *See Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Evidence must be viewed in a light most favorable to the non-moving party, and all inferences must be drawn in their favor. *See White River Amusement Pub, Inc. v. Town of Hartford,* 481 F.3d 163, 167 (2d Cir. 2007). A party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but…must set forth specific facts showing that there is a genuine issue for trial." *Sista*, 445 F.3d at 169; Fed.R.Civ.P. 56(e). Although district courts are encouraged to take caution with employment discrimination cases on a motion for summary judgment, "[e]ven in the discrimination context…a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment…and show more than some metaphysical doubt as to the material facts." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal citations and quotations omitted).

### B. Age, Race, and National Origin Discrimination Claims

Dixon alleges that Defendants discriminated against her in violation of federal, state, and city law through the alleged discriminatory statement made by Barrett, the conduct of Guthrie, and the lack of administrative support from IFAC in general. Discrimination claims under Title

5

VII, Section 1981, ADEA, NYSHRL, and NYCHRL, are analyzed identically for the purposes of this action. *See Salamon*, 514 F.3d at 226 (Title VII and NYSHRL treated as "analytically identical"); *Gorzynski*, 596 F.3d at 106 (ADEA and Title VII both follow same *McDonnell-Douglas* burden-shifting analysis);[6] *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000) ("identical standards apply" to Title VII, NYSHRL, and NYCHRL claims); *Weiss v. JPMorgan Chase & Co.*, No. 06 Civ. 4402 (DLC), 2010 WL 114248, at *2 (S.D.N.Y. Jan. 13, 2010) (ADEA, NYCHRL, and NYSHRL follow same analysis);[7] *Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316, 2009 WL 900739 (HB), at *3 (S.D.N.Y. Apr. 3, 2009) (Title VII and Section 1981 claims analyzed under same burden-shifting framework). Discrimination claims may be analyzed under either the *Price-Waterhouse* "mixed motive" analysis or the *McDonnell-Douglas* "burden shifting" framework. Plaintiff in this case is not entitled to a "mixed-motive" analysis, because she has not satisfied the heightened burden of producing "a 'smoking gun' or at least a 'thick cloud of smoke'" to support her allegations of discriminatory treatment. *Sista*, 445 F.3d at 174. She has not provided any evidence, such as policy documents or statements by decision makers, that "directly reflect[] the alleged discriminatory attitude." *Id.* at 173-74. In this case, Dixon failed to prove her *prima facie* case, carry her burden of persuasion that Defendant's non-discriminatory reasons were pretextual, or demonstrate discriminatory animus. *See Sista*, 445 F.3d at 169; *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[8]

### 1. *Prima Facie Case of Discrimination*

Plaintiff can demonstrate a *prima facie* case of discrimination by showing (1) she is a member of a protected group that is (2) qualified for the position, and (3) experienced an adverse employment action (4) under circumstances giving rise to an inference of discrimination.

---

[6] The Court noted in *Gorzynski* that ADEA cases may not be tried pursuant to a "mixed-motive" analysis because the Supreme Court reads the ADEA as requiring age to be the "but-for" cause of the adverse employment action. 596 F.3d at 106 (quoting *Gross v. FBL Financial Services,* 129 S.Ct. 2343, 2350 (2009)). Since Plaintiff has not satisfied the burden that would merit a "mixed-motive" analysis for any of her claims, *see infra*, the distinction is irrelevant in this case.
[7] Judge Cote noted in her decision that the NYCHRL would still allow for a "mixed-motive" analysis for age discrimination cases despite the decision to constrain the ADEA in *Gross*. *See Weiss*, 2010 WL 114248, at *4. Again, since the mixed-motive analysis is not applicable to this case, this distinction is not relevant.
[8] Plaintiff also hinted in her complaint that she might try to demonstrate a "hostile work environment" claim, but counsel did not directly raise this argument on summary judgment and at any rate has provided insufficient evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gorzynski*, 596 F.3d at 102 (internal quotations omitted).

*Gorzynski*, 596 F.3d at 107; *see also Sista*, 445 F.3d at 169.  The burden is not a heavy one.  *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 94 (2d Cir. 2001).  There is no question in this case that Dixon is a member of a protected group or that she experienced an adverse employment action since she was terminated by IFAC.  Though they raise performance issues as their nondiscriminatory reason for termination, Defendants do not challenge Plaintiff's *prima facie* qualification for her position.

There are, however, serious questions about whether Dixon sufficiently demonstrated that she was terminated "under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107.  The alleged discriminatory conduct that Dixon points to has at best a weak and circumstantial connection to her termination.  The only overt comment related to Dixon's age, race, or origin came from a co-worker, Defendant Barrett, who stated "she can't believe that IFAC could hire a black Jamaican woman at 48 years of age."  The statement, while without question inartful, is at best ambiguous as to whether it met the test for discriminatory animus, was laudatory of the efforts to increase workplace diversity, or had some other meaning.  Indeed, Plaintiff claims the statement was made at a meeting with others present, yet she provided no evidence that any other person heard Barrett say it, much less that it was thought to be a negative comment.  More importantly, there is no evidence to indicate that Barrett played any role whatsoever in the decision to terminate Plaintiff.  *See Tomassi v. Insignia Fin. Group, Inc.* 478 F.3d 111, 115-16 (2d Cir. 2007) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.").  Stray remarks that are not related to Dixon's discharge or neutral remarks unrelated to her protected group status are insufficient to demonstrate that she was terminated for discriminatory reasons.  *See, e.g., Slattery*, 248 F.3d at 94; *Ostrowski v. Atl. Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992) (describing remarks as "stray" when made "in the workplace by persons who are not involved in the pertinent decisionmaking process").  The two other incidents Dixon complains of – Guthrie's alleged decision to use her garbage can and yell at her, and the failure to provide "sufficient" administrative support – are facially non-discriminatory, and Plaintiff fails to offer anything but conclusory assertions that they were motivated by animus towards her race, age, or national origin.

    **2.  *Pretext and Discriminatory Motivations***

Dixon has also failed to show that Defendants' justification for their decision to terminate Plaintiff was pretextual and actually motivated by discriminatory animus. Defendants provide significant evidence, from practically the beginning of Plaintiff's employment to the point of her departure, which indicate she was terminated for a lack of management and performance skills. *See Slattery*, 248 F.3d at 93 (non-discriminatory justification by defendant shown by well-documented reasons in the record). Dixon's problems, particularly with interpersonal relationships, were documented in her evaluations and further shown by the string of complaints independently brought against her to IFAC's human relations department. The evidence tells a clear story of the Plaintiff's failure to perform assignments and to act appropriately with respect to a host of management and interpersonal issues. Further, IFAC's senior management gave significant feedback to the Plaintiff on these concerns and the time to correct them. Ultimately she was terminated after more critical reviews and no perceived improvement. This evidence is more than sufficient to "permit the conclusion that there was a nondiscriminatory reason for the adverse action," *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993)), and that pretext played no part in the decision to terminate the Plaintiff.

In order for the Plaintiff to have demonstrated that Defendants' reasons were merely "pretextual," Dixon must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered…were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000) (internal citations and quotations omitted). Plaintiff can do so "either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more." *Sista*, 445 F.3d at 173. Factors include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148-49 (2000)). In this case, Dixon has done little to contest Defendant's compelling and well-supported narrative of events, much less show that age, race, or national origin discrimination motivated the decision. Dixon tries to controvert the

charge that she was terminated for poor management and relationship issues with evidence that she actually had a positive performance record with IFAC.  However, a few positive comments in her evaluation and a certificate that all IFAC employees received that highlighted her positive attributes does not alone demonstrate "pretext," particularly in comparison to numerous complaints by IFAC employees about their interactions with Plaintiff, evaluations of Plaintiff with critical comments about her management skills, and a record of attempts by senior management to help her improve in light of these issues.

Dixon's contentions are further hindered by the "same actor inference," the idea that discriminatory intent is unlikely where the same person who hired an individual also decided to fire them.  *See Carlton*, 202 F.3d at 137.  While this is only a factor to consider and not a complete bar to relief, "[w]here the termination occurs within a relatively short time after the hiring, there is a strong inference that discrimination was not a motivating factor in the employment decision." *Id.* at 137-38.  Here, in 2006 Guthrie recommended that Dixon be hired and she was officially hired by Ball; less than two years later, Guthrie recommended that she be terminated and Ball made the decision to fire Plaintiff.  This is a sufficiently short period of time to still raise a strong inference against discriminatory animus.  *See id.*  Put simply, Dixon has failed to provide any significant evidence to indicate that her termination was due to anything other than her poor work relationships and performance issues.  *See Sista*, 445 F.3d at 173 (failure to point to any evidence that termination was due to discrimination "rather than his past behavior" rendered case suitable for dismissal on summary judgment).

### C. Retaliation Claims

Dixon also claims that Defendants retaliated against her for complaining about the alleged discriminatory acts.  To demonstrate a *prima facie* retaliation claim, Plaintiff must show that she (1) participated in protected activity; (2) suffered an adverse employment action; and (3) demonstrate a causal connection between her protected activity and the adverse employment action.  *See, e.g., Gorzynski*, 596 F.3d at 110 (2d Cir. 2010).  Retaliation can be shown with direct or indirect evidence of causation.  *See Chamberlin v. Principi*, 247 Fed. Appx. 251, 254 (2d Cir. 2007).  A retaliation claim is not focused on the alleged discrimination itself, but instead "must focus on the retaliation she suffered for complaining about the harassment …[Plaintiff] must show that the defendants took an adverse employment action against her in response to her

9

complaints." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).  Here, Dixon satisfies two of the elements, she complained about alleged discriminatory conduct and was terminated by IFAC, but fails to demonstrate any causal connection between her complaints and her termination.

Dixon claims that she complained to Ball about the discriminatory conduct of Guthrie and Barrett on June 29, 2007, and that Guthrie and Tishkoff retaliated by issuing memos critical of her performance which ultimately led to her termination by Ball in October 2007.  But this recitation of what occurred at IFAC is inconsistent with substantial evidence in the record.  Many if not most of the incidents leading to Dixon's termination occurred before the meeting with Ball where she complained about her treatment.  For example, her interpersonal skills were documented as needing work in her first evaluation, and e-mail records from IFAC's human relations department indicate that various people complained about Dixon before June 29.  Indeed, the meeting between Guthrie, Tishkoff, and Dixon to discuss these complaints happened the day before she met with Ball to complain about the alleged discrimination.  These contradictions put a significant hole in Plaintiff's retaliation claim.  Plaintiff also provides no evidence that the individual who decided to terminate her, Ball, was motivated to do so to retaliate for her complaints on June 29th.  Indeed, her argument seems to rely almost entirely on the temporal proximity of her termination with her alleged complaints.  Although a retaliation claim can be established indirectly "by showing that the protected activity was closely followed in time by the adverse action," there is no bright-line rule, and the further away in time the less likely there is to be a connection between the adverse employment action and the protected activity.  *Chamberlin* 247 Fed. Appx. at 254.  Here, Dixon was terminated almost four months after her complaint, greatly reducing the inference that her termination was in retaliation for her complaints.  *See id.* (five months was insufficiently close in time to raise inference).  Even where there is some temporal proximity, "where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery*, 248 F.3d at 95.  Here, Dixon was subjected to repeated critiques and complaints about her management and performance skills before she ever lodged any complaints about discrimination and, as such, her retaliation claim must be dismissed.

### D. Breach of Contract Claim

Dixon also claims that IFAC breached the employment contract by terminating Plaintiff without a three-month notice and well before the three-year time frame for employment concluded. A breach of contract claim under New York law requires (1) the existence of a valid contract; (2) that Plaintiff has performed his or her obligations under the contract; (3) that defendant failed to perform his or her obligations; and (4) it results in damages. *See, e.g., Levinson v. Primedia, Inc.*, No. 02 Civ. 2222 (DAB), 2007 WL 2298406, at *4 (S.D.N.Y. Aug. 9, 2007). The initial question for a breach of contract claim is "whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010). Summary judgment may be granted "when its words convey a definite and precise meaning." *Levinson,* 2007 WL 2298406, at *5(quoting *Seiden Assoc.'s, Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992)); *see also Maverick Tube*, 595 F.3d at 465 (whether contract is ambiguous is question of law for the court). A contract is ambiguous when "terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." *Maverick Tube*, 595 F.3d at 466 (internal quotations removed).

Here, the contract language is unambiguous, and demonstrates that Defendants did not breach their agreement with Dixon. Plaintiff first argues that the contract was breached because, given the language about a three-year period of employment, she could only be fired for "just cause." According to Dixon, this required something substantially more than the performance and management issues that were provided as reasons for her termination. She claims that the IFAC Handbook, which included performance and relationship issues as grounds for termination, was not incorporated into the agreement. This is incorrect. The contract expressly incorporated the IFAC Employee Handbook, which stated, as already noted, that New York was an "at will" employment state and that both parties had the option to terminate their relationship at any time. *See, e.g., Baron v. Port Authority of New York and New Jersey*, 271 F.3d 81, 85 (2d Cir. 2001) ("Policies in a personnel manual specifying the employer's practices with respect to the employment relationship, including the procedures or grounds for termination, may become a part of the employment contract."). In addition to the clear language about at will employment,

11

the Handbook also provided a non-exhaustive list of grounds for disciplinary actions that included termination; job performance and interpersonal issues were expressly included in that list.

Finally, Dixon misreads the language about notice prior to termination. The agreement did not require three month's notice, but rather stated that IFAC "anticipated" and "as a matter of professional courtesy" that three month's notice "should" be provided. Rife with qualifiers, the statement is not a binding agreement to give three month's notice before termination. Dixon has not sufficiently demonstrated a breach of contract claim against IFAC.

### E. Tortious Interference with Contract Claim

Finally, Dixon alleges that Ball, Guthrie, and Barrett tortiously interfered with her employment contract. To prove tortious interference under New York law, Plaintiff must show (1) the existence of valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of a third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages. *See, e.g., B & M Linen, Corp. v. Kannegiesser, Corp.*, 08 Civ. 10093 (RJH), 2010 WL 183410, at *8 (S.D.N.Y.,2010). There are a number of problems with this claim, not least of which is the fact that, as explained above, there is no actual breach of contract. Dixon's tortious interference claim must also be dismissed.

### III. CONCLUSION

For the reasons described above, Defendants' Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Partial Summary Judgment is DENIED, and this case is DISMISSED.

The Clerk of the Court is instructed close the case and remove it from my docket.

SO ORDERED
April ___, 2010
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

12